O

1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11

12   JESSE JUNIOR CHACON,                    Case No. 2:13-cv-08366-CAS (SHK)

13                        Petitioner,
                                             **ORDER ACCEPTING FINDINGS**
14             v.                            **AND RECOMMENDATION OF**
                                             **UNITED STATES MAGISTRATE**
15   CONNIE GIPSON,                          **JUDGE**

16                        Respondent.

17

18        Pursuant to 28 U.S.C. § 636, the Court has reviewed the Report and

19   Recommendation (the "Report") to grant petitioner's petition for writ of habeas

20   corpus on the ground that petitioner's rights under Batson v. Kentucky, 476 U.S.

21   79 (1986) were violated.  Dkt. 125.  The Court has additionally reviewed

22   respondent's objections to the Report, dkt. 131, petitioner's response to those

23   objections, dkt. 134, and any pertinent records as needed.  The Court has engaged

24   in de novo review of those portions of the Report to which respondent objected and

25   to which petitioner responded.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P.

26   72(b).  The Court accepts the findings and recommendation of the Magistrate

27   Judge.

28

In the objections to the Report, respondent takes issue with the Report's conclusion that petitioner's <u>Batson</u> challenges should be reviewed <u>de novo</u> because the Los Angeles Superior Court's application of <u>Batson</u> was contrary to Supreme Court precedent.  Dkt. 131 at 2.  Respondent also objects to the Report's finding that petitioner has established, by a preponderance of the evidence, that the prosecutor's striking of four jurors was motivated in substantial part by discriminatory intent and violated petitioner's rights under <u>Batson</u>.  <u>Id.</u> at 5-16.  The Court addresses each of respondent's objections in turn.

## I.   STANDARD OF REVIEW

Respondent objects to the Magistrate Judge's determination that, because the trial court's <u>Batson</u> analysis did not comply with Supreme Court precedent, <u>de novo</u> review of the <u>Batson</u> challenges is proper.[1]

To determine whether a peremptory challenge violates a defendant's rights under <u>Batson</u>, the trial court must apply a three-step analysis.  "First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has

---

[1]  While not raised as a ground for objection, the record demonstrates that the Magistrate Judge concluded that the decision of the California Supreme Court was not a decision on the merits because it relied only on procedural cases in denying petitioner's <u>Batson</u> claims.  <u>See</u> Report at 13.  Accordingly, the California Supreme Court decision does not render <u>de novo</u> review inappropriate.  Because petitioner's <u>Batson</u> claim was raised solely in a collateral challenge filed in the California Supreme Court and was denied by the California Supreme Court on procedural grounds, the Magistrate Judge concluded that the trial court's denial of petitioner's <u>Batson</u> claims was the last adjudication of petitioner's <u>Batson</u> claims on the merits.  <u>Id.</u> at 13-14.  While, under the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), claims adjudicated in state court on the merits are generally entitled to deference, the Magistrate Judge found that <u>de novo</u> review was nonetheless proper because the trial court's <u>Batson</u> analysis was contrary to or involved an unreasonable application of federal law.  <u>Id.</u> at 21-25; <u>see</u> 28 U.S.C. § 2254(d).

2

shown purposeful discrimination."  Snyder v. Louisiana, 553 U.S. 472, 476-77 (2008) (internal citations omitted).

Respondent contends that while "at times the trial court used incorrect and often confusing language while addressing several of [p]etitioner's Batson motions . . . , the trial court fully understood and correctly followed the Batson three-step process." Dkt. 131 at 4.  Thus, according to respondent, de novo review of petitioner's Batson challenges is improper.  Id. at 5.

Contrary to respondent's objection, the Court agrees with the finding in the Report that the trial court's application of the three-step Batson analysis was contrary to Supreme Court precedent.  Indeed, throughout voir dire, the trial court misstated and misapplied the three-step analysis.  For example, the trial court stated numerous times that the prosecution bore the burden of making a prima facie showing that it did not strike jurors based on race.  See Report at 17.  Several times, the trial court proffered its own race-neutral reasons for the striking of a juror, which were not offered by the prosecutor, to conclude that no prima facie showing had been made at step one of the analysis.  See id. at 17-18.  And when it did find that a prima facie showing had been made, the trial court at times considered the prosecution's race-neutral reasons and then concluded that no prima facie showing had been made.  See id. at 20.

Evidently, the trial court conflated the three steps of the Batson analysis and ultimately never moved beyond the step one consideration of whether a prima facie showing had been made that a strike was based on race.  Moreover, its step one analysis was improperly based on the arguments set forth by the prosecutor, rather than petitioner, and its own speculations as to race-neutral justifications for the strike.

The Ninth Circuit has found that similar misapplications of Batson are contrary to Supreme Court precedent.  For example, in Paulino v. Castro, 371 F.3d 1083

3

(9th Cir. 2004), the Ninth Circuit concluded that the trial court's application of Batson was contrary to Supreme Court precedent because "[t]he trial court never permitted defense counsel to explain the basis for his objection in the first instance" and "interrupted defense counsel and offered, sua sponte, its speculation as to why the prosecutor may have struck the [] jurors in question." Id. at 1089-90.

Similarly, in Currie v. McDowell, 825 F.3d 603 (9th Cir. 2016), the Ninth Circuit concluded that the state appellate court violated clearly established federal law when it resolved step one of the analysis by concluding that "'the record suggest[ed] grounds upon which the prosecutor might reasonably have challenged the jurors in question,' whether or not those were the reasons proffered." Id. at 609. In reaching this conclusion, the court reasoned that the "existence of grounds upon which a prosecutor could reasonably have premised a challenge does not suffice to defeat an inference of racial bias at the first step of the Batson framework." Id. (quoting Johnson v. Finn, 665 F.3d 1063, 1069 (9th Cir. 2011)). Most recently, in Hoyos v. Davis, 51 F.4th 297 (9th Cir. 2022), the Ninth Circuit concluded that the state court improperly "scanned the record, articulated its own race-neutral reasons why the prosecutor may have exercised his peremptory strikes, and denied Hoyos' Batson claim on those grounds at [s]tep [o]ne." Id. at 307.

Respondent contends that the trial court was simply considering the totality of the circumstances in the step one analysis and may properly consider race-neutral facts at this step. But even so, the trial court misapplied the analysis by denying petitioner the opportunity to make a prima facie showing in the first place and improperly considering the prosecution's contentions at step one. See, e.g., Report at 19 ("Next was, I believe, juror – also 8, [No.] 4883, whose nephew was killed in prison. I found a race neutral reason for that and did not have [the prosecutor] justify that."); Paulino, 371 F.3d at 1089-90. And, while a prima facie case requires "showing that the totality of the relevant facts give rise to an inference of

discriminatory purpose," <u>Batson</u>, 476 U.S. at 93-94, as <u>Paulino</u>, <u>Currie</u>, and <u>Hoyos</u> illustrate, the trial court may not make a step one determination based on its own speculations regarding the prosecutor's conduct because "[t]he <u>Batson</u> framework is designed to produce actual answers," not "imperfect speculation," <u>Johnson v. California</u>, 545 U.S. 162, 172 (2005).  Moreover, the trial court's analysis provides no basis for this Court to conclude that the trial court appropriately weighed the relevant circumstances to evaluate petitioner's showing at step one, as opposed to rejecting petitioner's <u>Batson</u> challenges at step one based on its own speculations as to the prosecutor's possible race-neutral reasons.

Based on these findings and the reasons set forth in the Report, the Court concludes that the trial court's application of <u>Batson</u> was contrary to clearly established federal law.  Therefore, the proper standard of review is <u>de novo</u>.[2]

## II.    Findings of Purposeful Discrimination

Respondent next contends that the Report erroneously concludes that four of the prosecution's peremptory challenges violated petitioner's rights under <u>Batson</u>. Dkt. 131 at 5-16.  Specifically, with respect to Juror 3615, respondent argues that the record indicates that the prosecutor struck Juror 3615 because she was noncommunicative and because she was a postal carrier.  <u>Id.</u> at 7-8.  Both of these reasons, respondent contends, provide valid bases for peremptory strikes.  <u>Id.</u>  With respect to Juror 6671, respondent argues that the prosecutor ran out of time during voir dire and decided to strike the juror because she lacked full information.  <u>Id.</u> at 10.  Respondent contends that the Report erroneously rejected the prosecutor's statement that she had run out of time during voir dire.  <u>Id.</u>  Respondent additionally contends that Juor 6671 was properly excluded based on her statement

---

[2] Based on the record, the Court additionally agrees with the Report that the trial court never made a determination at step three of the <u>Batson</u> analysis.  <u>See</u> Report at 25.  Accordingly, the Report's <u>de novo</u> step three analysis is proper.

1    that she was unsure if she could vote to convict without eyewitness testimony.  Id.

2    at 11.

3         Respondent further objects to the Report's finding that the prosecutor properly

4    struck Juror 4739 based on the fact that she had colitis and may have needed to

5    take frequent bathroom breaks, her "confusing answers" to questions about the

6    murder of her brother, and the fact that she wore a Bluetooth headset at the

7    beginning of voir dire.  Id. at 12-14.  Finally, with respect to Juror 2859,

8    respondent takes issue with the Report's comparative analysis and conclusion that

9    Juror 2859's negative experiences with law enforcement cannot justify the

10   prosecutor's strike against him because two white jurors described comparable

11   negative experiences with law enforcement during voir dire and were both seated

12   on the jury.  Id. at 15.  According to respondent, Juror 2859's story was a

13   "harrowing ordeal," to which the other jurors' experiences "pale[] in comparison."

14   Id. at 16.

15        Having carefully considered respondent's objections, the Court agrees with

16   the finding in the Report that petitioner's rights under Batson were violated.  While

17   the Court finds some of respondent's arguments regarding race-neutral reasons for

18   the exclusion of jurors to be persuasive when considered in isolation, in the

19   aggregate, the record supports the finding that the prosecutor improperly

20   eliminated jurors based on race.   See Snyder, 552 U.S. at 478 (explaining that "in

21   consideraing a Batson objection . . . , all of the circumstances that bear upon the

22   issue of racial animosity must be consulted," including strikes against other jurors);

23   Miller-El v. Dretke, 545 U.S. 231, 252-53 (2005) (looking to "[t]he whole of the

24   voir dire testimony" and "broader patterns of practice during the jury selection" to

25   determine whether strikes were based on race).

26        The Court reaches this conclusion in light of the persuasive evidence that

27   certain individual jurors were struck based on their race.  Specifically, the Court

28                                        6

agrees with the Report's comparative analysis of Juror 2859 and finding that the striking of this juror amounted to purposeful discrimination. While Juror 2859 had adverse experiences with law enforcement in the past, including an incident of false arrest that occurred about thirty years prior to the trial, he stated that the officer who falsely imprisoned him "was just one individual" and that he did not "hold [the incident] against any particular officer." Report at 48. Furthermore, he stated that, notwithstanding his past experiences, he would give police officers the same credibility that he would give to anyone else. Id.

According to the prosecutor, this adverse experience justified striking Juror 2859; however, the prosecutor did not strike two white jurors, Juror 4618 and Juror 1300, who had similar negative experiences with law enforcement. Report at 49; see Miller-El, 545 U.S. at 241 ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar [panelist who is not black] who is permitted to serve, that is evidence tending to prove purposeful discrimination."). The Court is not persuaded by respondent's attempts to downplay the experiences of Jurors 4618 and 1300. Juror 4618 was arrested for possession of marijuana that he possessed in accordance with a medical marijuana certificate, which the arresting officers refused to consider. Report at 49. Juror 4618 stated that he "absolutely" had a negative feeling about his arrest, given that he was in compliance with the law, and stated that "[o]nce you've been smacked, you don't like being smacked again." Report at 50. The prosecutor did not ask Juror 4618 any questions about his arrest. Id. Similarly, Juror 1300 stated that she was unfairly arrested about 40 years prior after she flagged down police to inform them of a car "zooming around." Id. The prosecutor did not ask any questions about Juror 1300's arrest or about her view that her treatment was unfair. Id. at 51.

In sum, like Juror 2859, Jurors 4618 and 1300 had past negative experiences with police during which they felt they were treated unfairly. And none of the

three jurors stated that they felt their past experiences would affect their jury service.  Despite these apparent similarities, the prosecutor did not ask the white jurors any questions about their arrests and only struck the black juror.  The Court is persuaded that these facts demonstrate purposeful discrimination.  See Shirley v. Yates, 807 F.3d 1090, 1107 n.22 (9th Cir. 2015) (explaining that "differential questioning [] of minority veniremembers [] offer[s] significant support for a finding of discrimination"); Miller-El, 545 U.S. at 244-45.

Several of respondent's proffered justifications for elimination of the other jurors are more persuasive when considered in isolation.  For example, it appears to the Court that Juror 4739's colitis, if raised by the prosecutor as a race-neutral rationale for striking her, could give rise to a valid strike.  See Murillo v. Soto, 2015 WL 3454593, at *12 (E.D. Cal. May 29, 2015) (citing juror's bladder issue as one of several race-neutral reasons supporting a valid strike).  Likewise, the statement by Juror 6671 that she was unsure if she could convict without eyewitness testimony could provide a race-neutral reason for her elimination if further voir dire had not led to the conclusion that she could not vote to convict without eye witness testimony.  However, when viewed in the context of all of the relevant circumstances, including the prosecutor's striking of the other jurors, see Snyder, 552 U.S. at 478, the Court agrees with the Report's findings that the elimination of the four jurors violated petitioner's rights under Batson.  These relevant circumstances include the fact that the trial court sustained two Batson challenges based on the prosecutor's striking of two Hispanic jurors, who were reseated.  Report at 16.  While this is some evidence that the court considered petitioner's Batson challenges, it is also evidence, as noted by the Magistrate Judge, that the prosecutor made multiple challenges against non-white jurors,

1   indicating that an inference can be drawn that the prosecutor was engaged in a
2   pattern or practice of challenges based on race or ethnicity.  See Report at 33.[3]
3       This finding is buttressed by the prosecutor's repeated mischaracterization of
4   the voir dire, which undermines the credibility of her justifications for the strikes.
5   See Snyder, 552 U.S. at 485 (prosecutor's representations that are not supported by
6   the record fail demonstrate purposeful discrimination).  For example, the
7   prosecutor stated that she eliminated Juror 4739 because the juror's brother was
8   killed in a drive-by shooting and the juror did not know if justice was served in her
9   brother's case.  Report at 36.  Respondent contends that such a negative experience
10  with the justice system can serve as a race-neutral reason for striking a juror.  Dkt.
11  131 at 14.  But, contrary to the prosecutor's representation, Juror 4739 actually
12  stated that she thought that justice was served in her brother's case.  Report at 38.
13  Similarly, with respect to Juror 2859, the prosecutor said that she eliminated him
14  "because he thought the cops were liars and planting stuff on him."  Report at 47.
15  The Court agrees with the Report's finding that Juror 2859 never made such a
16  representation and that this is a mischaracterization of his statements.  Id. at 48-49.
17      The Court additionally notes that, at various points, the prosecutor failed to
18  request additional time to follow up on jurors' statements in voir dire but rather
19  chose to strike the jurors on a less than complete record.  For example, the
20  prosecutor did not ask Juror 6671 any follow up questions regarding her statement
21  that she was unsure if she could convict without an eyewitness, on which the
22  prosecutor subsequently relied to justify the strike.  As the Magistrate Judge
23  concluded, this practice may serve as evidence that the prosecutor's explanations
24

---

25  [3]  Indeed, of the three Hispanic jurors seated on the jury, two were the subject of
26  peremptory strikes and were reseated after the trial court sustained petitioner's
    Batson challenges.  The prosecutor stated that she believed that the third juror was
27  white.  Thus, the only seated Hispanic juror against whom the prosecutor did not
    exercise a strike was believed to be white by the prosecutor.  Report at 10 n.4.
28                                              9

for the strikes were pretextual.  Report at 32; <u>see</u> <u>Castellanos v. Small</u>, 766 F.3d 1137, 1149 (9th Cir. 2014) ("The State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.") (internal citation omitted).

The prosecutor's inconsistent statements likewise call into question the reliability of her stated race-neutral reasons.  For instance, with respect to Juror 3615, the prosecutor first stated that she remembered the juror being noncommunicative and "having no answers to [her] question" but then indicated that she could not remember if she asked the juror any questions at all.  Dkt. 45-6 at 698-700.  Likewise, the prosecutor initially stated that she "blanked out" during the questioning of Juror 6671 because she did not eat lunch and "missed the entire questioning of her."  Dkt. 45-7 at 1109.  When the trial court subsequently read the questions and answers aloud, the prosecutor stated that the strike was based on Juror 6671's statement that she was unsure if she could convict without an eyewitness.  <u>Id.</u> at 1111.  The prosecutor's initial statement that she blanked out and missed the entirety of the questioning appears to be in tension with her statement that she struck the juror based on this answer.  Based on these inconsistencies, one could challenge the reliability of the prosecutor's statements regarding the reasons for the strikes.

In short, the record raises serious doubts as to the credibility of several of the prosecutor's stated reasons for striking the four jurors.  In isolation, an individual misstatement may not give rise to a finding of discrimination, and the proffered justifications may pass muster.  But the patterns that emerge when viewing the record as a whole and the strikes in the aggregate support a finding that petitioner's rights under <u>Batson</u> were violated.  <u>See</u> <u>Miller-El</u>, 545 U.S. at 252-53.

1   Accordingly, notwithstanding respondent's objections, the Court accepts the

2   findings and recommendations in the Report.

3        IT IS THEREFORE ORDERED that Judgment be entered granting the

4   petition, and that respondent release petitioner unless the State of California elects

5   to retry petitioner within 90 days from the date of this order.

6

7   Dated: July 11, 2023

8                                             HONORABLE CHRISTINA A. SNYDER
                                              United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    11